WYOMING TIE & TIMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21370, 24574. Promulgated January 11, 1928.

*Richard S. Fillius, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

1146

1148

**OPINION.**

SIEFKIN: The questions involved in this case are whether petitioner should be allowed a value for invested capital for two contracts paid in in 1915 for common capital stock of petitioner, and whether petitioner should be allowed to take depreciation in the amount of $6,860.75 on permanent improvements for the year 1920.

Section 325 (a) of the Revenue Act of 1918 provides that the term " intangible property " means patents, copyrights, secret processes and formulae, good will, trade-marks, trade-brands, franchises, and other like property.

The term " tangible property " means stocks, bonds, notes and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property.

Section 326 (a) (4) provides that invested capital for any year means " intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporations outstanding on March 3, 1917, whichever is lowest."

The evidence in this case discloses that prior to April 10, 1915, the Wind River Timber Co. acquired two contracts, one with the United States Government, dated January 23, 1914, providing for the purchase of 125,000,000 feet of timber, and one with the Chicago & North Western Railway Co., dated June 12, 1913, providing for the sale to

this company of 3,200,000 railroad ties, deliveries to be at the rate of 350,000 to 400,000 ties per year. The petitioner, shortly after its incorporation, entered into an agreement with the Wind River Timber Co. whereby petitioner, in exchange for $350,000 of its common capital stock, received all the assets and liabilities of the Wind River Co. and the assets of Wind River Co. actually were taken over June 1, 1915. The evidence in the case, which is meagre with regard to the records and operation of the Wind River Co., discloses that the only assets which the petitioner received from the said company for the $350,000 of capital stock, were the two contracts. It is, therefore, necessary to determine the value of the contracts.

The evidence shows that the timber land obtained by the petitioner contained the best kind of tie timber and was located about 100 miles by wagon road from Riverton, Wyo., but Wind River could be utilized at its flood stage to float logs and ties to Riverton, which afforded a market for lumber produced, and the by-products, such as sawdust, fence poles, and mine props. The market for lumber products reached as far eastward as Casper and as far westward as Lander. The freight rates on lumber from other sources handicapped the petitioner's competitors. The contract with the railroad called for the delivery of the ties to a point on Wind River near Riverton. The price for No. 1 ties was to be 65 cents and for No. 2 ties 45 cents. It is shown that the cost of production of a No. 1 tie was about 46 cents and of a No. 2 tie, about 39 cents, including all expenses. The Wind River Co. had delivered 33,395 ties to the railroad and there remained 3,166,605 ties yet to be delivered.

In view of the foregoing, we find that the value of the contracts is in excess of $197,025, and that amount should be included in invested capital. Since the petitioner has claimed only that amount as invested capital, it is unnecessary to determine whether the contracts are tangible or intangible property, as in either event $197,025 is within the statutory limitation.

With regard to the depreciation claimed for improvements for the year 1920, no evidence is submitted as to the dates on which the improvements were completed. It was testified that some were made in 1919 and some in 1920, and that all were completed and in use by October 31, 1920. From this evidence no determination can be made of the amount of depreciation on such assets up to October 31, 1920, and we are compelled to disallow the claim for the deduction.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*